IN THE UNITED STATES THE DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

MENOMINEE INDIAN TRIBE OF WISCONSIN,

   Plaintiff,               Case No. 09-C-496

v.

THE UNITED STATES DEPARTMENT OF
THE INTERIOR, et al.,

   Defendants.

## DECISION AND ORDER

  In this action the Menominee Indian Tribe of Wisconsin (hereinafter "Tribe" or "Plaintiff") seeks judicial review of the January 7, 2009 decision of the Secretary of the Department of the Interior (hereinafter "Secretary" or "Defendant") denying the Tribe's application to have the Department take land in Kenosha, Wisconsin into trust for the Tribe's benefit. The Secretary's authority to take land into trust is governed by the Indian Reorganization Act ("IRA"), 25 U.S.C. § 465, and its implementing regulations. 25 C.F.R. § 151. Because the Tribe intends to use the land to operate a casino, the Secretary's review of the Tribe's application is also governed by the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2719. The Tribe alleges that denial was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

  More specifically, the Tribe argues, first, that the Secretary denied the Tribe's application pursuant to standards set forth in two documents – the January 3, 2008 Guidance Memorandum and the September 21, 2007 Checklist for Gaming Acquisitions – that were put into effect in violation

of the APA's notice and comment rule-making requirements. Second, the Tribe contends that the decision to deny its application was made well in advance of the January 7, 2009 denial letter, and that the Guidance Memorandum and Checklist rule were adopted to give a "veneer of legitimacy to the arbitrary, capricious, and unlawful denial" of applications filed with the Department by the Menominee and other tribes. (Tribe's Reply to Opp. to Request for Judicial Notice, Dkt. 26 at 1.) Lastly, the Tribe contends that the Secretary's denial is arbitrary and capricious because there is no evidence in the record to support the factual conjectures on which it was based.

Three narrow issues are now before the Court on the Tribe's Motion to Consider Extrinsic Evidence: whether the Tribe should be allowed to supplement the administrative record with additional evidence, whether this Court should take judicial notice of certain documentary evidence[1], and whether the Tribe should be allowed to conduct additional discovery, including deposing witnesses.

**I. BACKGROUND**

This lawsuit stems from the Tribe's application to the Department to have off-reservation land taken into federal trust for the purpose of establishing a gaming facility. As a federally recognized tribe, the Tribe is authorized to operate gaming facilities for Tribal economic development under the IGRA, and can apply to have land taken into trust for that purpose under the IRA even if the land is off reservation. 25 U.S.C. § 465; 25 CFR § 151. In July 2004, the Tribe

---

[1]This Court will not rule separately on Plaintiff's request for judicial notice (Dkt. 3) which has been fully briefed by both parties. (Resp., Dkt. 11 and Reply, Dkt. 26.) Both parties incorporate their respective arguments and positions on the request for judicial notice into this Motion to Consider Extrinsic Evidence. (Dkt. 35 at 10 and Dkt. 38 at 13.) This Court's decision and order with regards to Plaintiff's request for judicial notice is stated herein.

applied to the Bureau of Indian Affairs to have the United States Secretary of the Interior take land in Kenosha, Wisconsin into trust for the Tribe's benefit. The Tribe intends to construct and operate a casino on the trust land. The Kenosha location is desirable because of its location ten miles north of the Wisconsin and Illinois border, between the Chicago and Milwaukee metropolitan areas. The Tribe is located in Menominee County, Wisconsin, however, approximately 170 miles north of Kenosha.

The Secretary admits that while the Tribe's application to take the Kenosha property into trust for it was pending, the Department was facing "an influx of requests for the Secretary to take land into trust that was a great distance from the applicant-Tribe's reservation, in some cases up to 1,000 miles." (Def.'s Resp. in Opp. to Mot. to Consider Extrinsic Evidence, Dkt. 38 at 2.) In response to this influx, the Department issued the Checklist and Guidance Memorandum that the Tribe contends constitute unlawfully promulgated administrative rules. Fearing that its application would be unlawfully denied under the standards set forth in the Checklist and Guidance Memorandum, the Tribe commenced an action on November 7, 2008, for injunctive relief to enjoin the Department from using them to make a decision on its application. *Menominee Indian Tribe of Wisconsin v. Department of the Interior*, No. 1:08-cv-00950-WCG (E.D. Wis). The Court denied the Tribe's motion for a temporary restraining order on November 26, 2008, and the action was later dismissed on motion of the Tribe.

In the meantime, the administrative process continued. The process involved review of documents and opportunities for the city, county, state, and interested parties to comment on the proposed casino trust land. The administrative record from this process includes over 12,900 pages. City and County leaders in Kenosha supported the Tribe's application and the Menominee casino project. Milwaukee officials, however, joined with the Tribe's principal competitor, the Forest

County Potawatomi Tribe that runs an off-reservation casino in Milwaukee, in opposing the Tribe's application. The Midwest Regional Office of the Department of Indian Affairs ("DIA") also supported the project and recommended that the Department take the Kenosha land into trust for the Menominee Tribe. (AR12907-16.) Although the DIA regional office and Kenosha officials supported the casino project, the Department retains discretion over the final trust decision. On January 7, 2009, the Department issued an eleven-page decision letter denying Plaintiff's application. (AR 12895.) The Tribe, claiming the administrative record is incomplete and that the Department's decision was marred by bad faith, now asks this Court to add additional documents to the administrative record, take judicial notice of others, and to allow the Tribe to depose a number of current and former Department officials.

**II. LEGAL STANDARD**

Under the APA, 5 U.S.C. §§ 701-706, courts have the power to review certain actions taken by federal administrative agencies. Courts grant agency decision makers substantial deference both on the decisions they make and the process they use to reach their decisions. *See Citizens to Pres. Overton Park v. Volpe,* 401 U.S. 402, 420 (1971). This deference frees agency officials to act without the burden of having to defend their decisions later in a court of law. Generally, courts limit their review of agency decisions to the administrative record. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). Courts should not consider evidence that the agency never had a chance to review. *Edwards v. United States Dept. of Justice,* 43 F.3d 312, 314 (7th Cir. 1995). The "focal point for judicial review should be on the administrative record already in existence" rather than "some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 141 (1973) (per curiam).

4

There are exceptions to the general rule that courts conducting judicial review of agency action are limited to the administrative record, however. For example, discovery or supplementation of the administrative record "is proper when it is necessary to create a record without which the challenge to the agency's action cannot be evaluated." *USA Group Loan Services, Inc. v. Riley*, 82 F.3d 708, 715 (7th Cir. 1996). Discovery is also allowed when the public record discloses evidence of bad faith. *Id.* Where a party can make a "strong showing of bad faith or improper behavior," the party may be entitled to extra-record discovery and examination of agency personnel. *Sokaogon Chippewa Community v. Babbitt*, 929 F. Supp. 1165, 1177 (W.D. Wis 1996) (hereinafter "*Sokaogon I*") (citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S. Ct. 814, 825-26, 28 L. Ed.2d 136 (1971). The case law applying the *Overton Park* decision fails to clarify what evidence constitutes a "strong showing." A court must therefore scrutinize each matter carefully and individually while holding plaintiff to a significant evidentiary burden. *Sokaogon Chippewa Community v. Babbitt*, 961 F. Supp. 1276, 1280 (W.D. Wis. 1997) (hereinafter "*Sokaogon II*").

## III. ANALYSIS

### A) Additional Evidence to Complete the Record

The Tribe asks this Court to add seven documents to complete the record. (Dkt. 35 at 5-8.) Five of the seven documents will be added because the Department agrees that they should be included and were inadvertently omitted. (Dkt. 38 at 10.)[2] The other two documents the Tribe

---

[2]This Court considers the following five documents part of the Administrative Record: (1) February 17, 2007 letter from James Cason to Karen Washinawatok, (2) January 2006 article entitled "An Impact Analysis of Tribal Government Gaming in California", (3) Midwest Regional Director's December 18, 2007 recommendation, (4) Midwest Regional Director's January 19, 2007 recommendation, and (5) Draft Record of Decision under the National Environmental Policy.

5

seeks to add to the record are: (1) a notice cancelling an Environmental Impact Study ("EIS") and (2) the complaint from the Tribe's previous federal case seeking to enjoin the Department from applying the Guidance Memorandum and Checklist, along with the exhibits referenced therein and the accompanying request for judicial notice. Regarding the notice cancelling the EIS, this Court recognizes that it was never actually issued and therefore was not before the decision-maker. (AR12855.) Nevertheless, it is arguably intended to support the Tribe's contention that the decision to deny its application was made long before the formal written decision was issued. Its inclusion is therefore necessary "to create a record without which the challenge to the agency's action cannot be evaluated." *USA Group Loan Services,* 82 F.3d at 715. For this reason, it will be added.

The Tribe's request that the complaint and related documents from its previous action against the Department be added to the record is less sound. A complaint, of course, consists of one party's allegations against another intended to state a legal claim. Obviously, the Tribe's complaint formed no part of the evidentiary record upon which the Secretary based his decision. The fact that the Tribe filed a complaint against the Department while its application was pending and the specific allegations it made, if relevant to the court's review, can be the subject of a request for judicial notice. *See Deicher v. City of Evansville*, 545 F.3d 537, 541-42 (7th Cir.2008) ("Since the complaint filing date is a matter of public record and subject to judicial notice, we find that it is not extrinsic evidence."). But the Tribe offers no explanation for why the complaint it filed in the earlier action should be made a part of the administrative record. The mere fact that the record contains e-mails referring to it is not enough to warrant its addition to the record. The Tribe is free to make the same allegations here. The fact that they were previously made in writing in an earlier action does not give them greater weight. Accordingly, the request that the complaint from the previous action be added to the record here is denied.

6

### B) Judicial Notice of Extrinsic Evidence

The Tribe asks this Court to take judicial notice of thirteen additional documents. (Dkt. 35 at 10.)[3] The first five documents are now included in the Administrative Record and thus there is no need to take judicial notice of them. (Dkt. 38 at 12.) These include the documents bearing bate stamps AR01340-94; AR12863-78; AR12880-94; AR01487-92; and AR12896-06. Whether this court should take judicial notice of, and consider, the next eight documents is contested. (Dkt. 38 at 13 and Dkt. 35 at 10.) Judicial notice is proper for adjudicative facts that are not subject to reasonable dispute. *See* Fed. R. Evid. 201 (a), (b). On one preliminary point the Tribe and the

---

[3] These documents are attached to Plaintiff's Request for Judicial Notice, (Dkt. 3) and include: (1) Ryan Baumtrog et al., *The Unmet Needs of the Menominee Nation: Challenges and Opportunities*, Report for the Menominee Kenosha Gaming Authority, July 2008; (2) Indian Gaming Paper prepared by the Counselor to the Secretary of the Interior, the Principal Deputy Assistant Secretary for Indian Affairs, the Associate Solicitor--Division of Indian Affairs, and the Deputy Associate Solicitor–Division of Indian Affairs, and submitted to the secretary of the Interior on February 20, 2004; (3) Checklist for Gaming Acquisitions, Gaming-Related Acquisitions, and IGRA Section 20 Determinations issued by the Department of the Interior in September 2007; (4) January 3, 2008 Guidance Memorandum on taking off-reservation land into trust for gaming purposes; (5) Letter from George T. Skibine, Acting Deputy Assistant Secretary for Policy and Economic Development, to Lisa W. Waukau, Chairperson, Menominee Indian Tribe of Wisconsin dated January 7, 2009; (6) February 27, 2008 testimony before the United States House of Representatives Committee on Natural Resources regarding Department of Interior's policy on off reservation acquisitions of land in trust for Indian gaming; (7) Kathryn R.L. Rand, Alan P. Meister, and Steven Andrew Light, *Questionable Federal "Guidance" on Off-Reservation Indian Gaming: Legal and Economic Issues,* Gaming Law Review and Economics, Vol. 12, No. 3 (2008); (8) January 4, 2008 Department of the Interior press release "Department of the Interior Issues Off-Reservation Gaming Guidance and Sends Letters to Tribes"; (9) Letter from George T. Skibine, Acting Deputy Assistant Secretary for Policy and Economic Development, to Eugene Bigboy, Sr., Chairman Bad River Band of Lake Superior Chippewa Indians, and Hazel Hindsley, President, St. Croix Chippewa Tribe, dated January 13, 2009; (10) Memorandum of Agreement between the National Indian Gaming Commission and the Department of the Interior, executed in 2007; (11) December 21, 2006 letter from James E. Cason, Associate Deputy Secretary of the Interior, to George E. Pataki, Governor of New York; (12) February 20, 2001 letter from James E. McDivitt, Deputy Assistant Secretary–Indian Affairs, to Scott McCallum, Governor of Wisconsin; and (13) Defendants Brief in Opposition to Plaintiff's Appeal of July 15, 1995, Decision of Michael J. Anderson, *Sokaogon Chippewa Community et. al. v. Babbitt*, No. 95-c-659 (W.D. Wis. Aug. 23, 1996).

Department agree: judicial notice of the fact that the eight documents <u>exist</u> is proper. (*Id.*) This Court finds that the existence of the eight documents is generally known and capable of accurate and ready determination and does, in turn, take judicial notice of the fact that the eight documents exist. Fed. R. Evid. 201 (a), (b); *see also Global Network Commc'ns., v. City of New York,* 458 F.3d 150, 157 (2nd Cir. 2006). While the existence of the eight documents is not in dispute, the parties disagree about whether this Court should actually take judicial notice of the content of the documents–that is, whether the conclusions in the documents are generally known and capable of accurate and ready determination.

  Exhibits 6 and 7 are not the type of documents about which there can be no reasonable dispute. *See County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 78 (D.D.C. 2008) (refusing to take judicial notice of Inspector General's report where the "Court knows nothing about the investigative process which led to the report's conclusions, and it cannot access the report's validity"). Exhibit 6 is testimony a Harvard professor presented to the U.S. House of Representatives Natural Resources Committee related to the Department's guidance on off-reservation acquisition of land in trust for Indian gaming. The content of the professor's testimony is subject to reasonable dispute (the professor notes that "off-reservation acquisitions for gaming are controversial"). While the professor certainly has expertise in his field, his testimony contains theories and opinions which are reasonably debatable. Thus judicial notice is not proper. Likewise Exhibit 7, an article from *Gaming Law and Economics*, calls into question Federal guidance on off-reservation gaming. The content of this Exhibit is fairly debatable because there are arguments for and against the position advocated by the article. Accordingly, this Court declines to take judicial notice of the content of Exhibits 6 and 7.

Exhibit 8 is a two-page Department press-release from January 2008 announcing that the Assistant Secretary issued a Guidance Memorandum related to taking land into trust and that the Department had exercised its discretion in deciding not to take land into trust for 11 tribes. The fact that the Assistant Secretary issued the Guidance Memorandum and made certain decisions is not debatable. Because the contents of Exhibit 8 are not subject to reasonable dispute judicial notice is proper. Fed. R. Evid. 201 (a), (b). Moreover, the Guidance Memorandum is expressly referenced in the Department's January 7, 2009 decision denying the Tribe's application as a basis for the Secretary's "greater scrutiny" of the "tribe's justification of the anticipated benefits from the acquisition." (AR012896).

Exhibit 9 is a 2009 land to trust denial letter from the Department's Acting Deputy Secretary for Policy and Economic Development to the President and Chairman of the Chippewa Indian Tribe. Judicial notice is proper for agency decisions such as this. *See Fornalik v. Perryman,* 223 F.3d 523 (7th Cir. 2000) (noting authority of courts to take judicial notice of agency and judicial decisions). Though the relevance is not altogether clear, the fact that the Department denied the Chippewa application is not subject to reasonable dispute and, accordingly, this Court will take judicial notice of Exhibit 9 if it proves relevant.

Exhibit 10 is also appropriate for judicial notice. The 2007 Memorandum of Agreement between the National Indian Gaming Commission and the Department of the Interior is not subject to reasonable dispute. *See Medhin v. Ashcroft*, 350 F.3d 685, 690 (7th Cir. 2003) (taking judicial notice of State Department report). The fact that the Commission and the Department entered into this Agreement is not debatable. This Court takes judicial notice of Exhibit 10 and will consider it if it is shown to be relevant to these proceedings.

Exhibits 11 and 12 are 2006 and 2001 letters from the Department to the Governors of New York and Wisconsin, respectively. Although the letters are of a type which, if not in dispute, the Court could take judicial notice, their relevance to this proceeding is not yet apparent. The Tribe contends that they show a change in the manner in which tribal distant land-into-trust applications were handled. It seems from the Secretary's brief, however, that such change is not in dispute. The Department freely admits that it issued the 2007 Checklist for Gaming Acquisitions and the 2008 Guidance Memorandum in response to "the influx of requests for the Secretary to take land into trust that was a great distance from the applicant-tribe's reservations." (Def.'s Br. in Opp. to Mot. to Consider Extrinsic Evidence, Dkt. 38 at 2.) If the Department's issuance of such standards is improper or unlawful under the APA, the Tribe may be entitled to relief. That, of course, is an issue the Tribe will no doubt address when it gets to the merits. If in order to fully present its argument, the above described letters are relevant, the Court will consider them.

Exhibit 13 is a legal brief from *Sokaogon I*, 929 F. Supp. 1165, (W.D. Wis. 1996). Certainly this Court would take judicial notice of the relevant decisions of other courts within the federal judicial system if the proceedings have a direct relation to matters at issue. *See Philips Medical Sys. Int'l v. Bruetman*, 982 F.2d 211, 215 n. 2 (7th Cir.1992) (quoting *United States v. Hope*, 906 F.2d 254, 260 n. 1 (7th Cir.1990), cert. denied, 499 U.S. 983 (1991)). Here, however, the Tribe asks for judicial notice, not of a prior court decision, but rather of a brief field by a party in a prior lawsuit involving similar issues. In certain circumstances courts do take judicial notice of pleadings. *Day v. Union Mines Inc.* 862 F.2d 652 (7th Cir. 1988) (taking judicial notice of state court pleadings where court held state and federal lawsuits were parallel). Here, however, at least at this point, neither the facts or argument set forth in the *Sokaogon* case appear to fall within the parameters of Rule 201. Facts and legal argument set forth in an adversary party's brief in another

10

case are subject to reasonable dispute. Accordingly, the Tribe's request will be denied as to Exhibit 13.

In sum, the Court concludes that the contents of all thirteen of the Exhibits, with the exception of 6, 7, and 13, are of a type of which judicial notice can be taken. Upon a showing of relevance, the Court will consider the contents in its review of the Secretary's decision.

### C) Extrinsic Evidence to Supplement the Record

The Tribe asks this Court to consider other extrinsic evidence to "supplement" the administrative record. (Dkt. 35 at 8-22.) Although the record contains over 12,900 pages of documentary evidence, and culminates in an 11 page denial letter, the Tribe insists that the "Department's action is not adequately explained in the record before the Court, and additional evidence is necessary to understand the way the Department acted as it did." (*Id.* at 8.) Accordingly the Tribe seeks to supplement the record with additional documents.[4] These documents are different from both the documents the Tribe seeks judicial notice of and from the documents the Tribe submits to "complete" the record.

---

[4] The majority of the documents are exhibits to the Wood Decl., Dkt. 29-3: (Ex. 3) December 16, 2005 Preliminary Draft 25 C.F.R. § 151 Regulations; (Ex. 4) February 1, 2007 letter from James Cason to the Stockbridge-Munsee Community; (Ex. 5) December 21, 2006 letter from James Cason to the St. Regis Mohawk Tribe; (Ex. 6) February 15, 2007 Indianz.com News Story: "Interior Department wary of off-reservation gaming"; (Ex. 7) April 12, 2007 Indianz.com News Story: "Artman jumps into new job as head of BIA"; (Ex. 8) Testimony before the February 27, 2008 U.S. House of Representatives Natural Resource Committee: Oversight Hearing into the Department of Interior's Recently Released Guidance on Taking Land Into Trust for Indian Tribes and Its Ramifications; (Ex. 9) Department letters dated January 4, 2008 denying fee-to-trust gaming applications for Stockbridge-Munsee Community of Wisconsin, the St. Regis Mohawk Tribe, and nine other Indian tribes; (Ex. 20) Statement of Kevin Gover, Assistant Secretary–Indian Affairs, before the Senate Committee on Indian Affairs, May 12, 1998; (Ex. 22) Testimony of George T. Skibine, Acting Deputy Assistant Secretary–Indian Affairs, before the Senate Committee on Indian Affairs, July 27, 2005; (Ex. 23) Mary Jane Sheppard, *Taking Indian Land into Trust,* 44 S.D.L. Rev. 681, 687 (1999); (Ex. 24) July 13, 2007 Letter from George Skibine to Robert Alder. The Declaration of Dr. Katherine A. Spilde is Attachment 28 to Dkt. 29. Also included are ¶ ¶ 2-3 of the Wood Decl., Dkt 29-3.

11

The Tribe's request to supplement the record with these additional documents will be granted. They are apparently intended to provide support for the Tribe's argument that the Department improperly applied a proposed rule in the form of a Guidance Memorandum in reaching its decision. Supplementing the record with these documents simply permits the Tribe to put forward its argument. Whether the argument has merit is not the issue to be decided at this point in the proceeding. There is no dispute that the documents are authentic and reflect ongoing policy considerations within the Department. Supplementing the record with these documents does not undermine the purpose of the general rule limiting judicial review to the agency record and does not unduly intrude into its decision making process. It will enable the court to properly assess the Tribe's principal claim that the Department's decision was arbitrary, capricious, and in bad faith.

### D) The Tribe's Deposition Requests

The Tribe seeks to conduct depositions of several present and former Department officials and other individuals.[5] Extra-record examination of agency officials should be allowed only upon a "strong showing of bad faith or improper behavior." *Overton Park*, 401 U.S. at 420. Without such a showing, there is a presumption of good faith and regularity that attaches to agency decisions. *Withrow v. Larkin*, 421 U.S. 35, 55 (1975) (citing *United States v. Morgan*, 313 U.S. 409, 421 (1941). The Tribe must present "well-nigh irrefragable proof" of bad faith or bias on the part of the Department in order to overcome this presumption. *China Trade Ctr., L.L.C. v. WMATA,* 34 F. Supp 2d 67, 70-71 (D.D.C. 1999) (quoting *Haney v. United States,* 676 F.2d 584,

---

[5] The Tribe seeks to depose: (1) George Skibine, the Acting Deputy Assistant Secretary for Policy and Economic Development; (2) Carl Artman, the former Assistant Secretary of the Interior for Indian Affairs (3) Donald Sutherland, a former environmental specialist at the BIA's central office; and (4) Eric Dahlstrom, an attorney who represents the Forest County Potawatomi Community.

12

586 (Ct. Cl. 1982)). To analyze "bad faith" both the Tribe and the Department compare and contrast the facts at hand with those present in *Sokaogon I and Sokaogon II*. *Sokaogon I*, 929 F. Supp. 1165, (W.D. Wis 1996) and *Sokaogon II*, 961 F. Supp. 1276, 1280 (W.D. Wis. 1997). This Court concludes that the facts here, even when viewed in combination and in a light favorable to the Tribe, simply do rise to the same level of alleged "bad faith" as the facts in the *Sokaogon* cases.

It is, therefore, worth outlining the basic facts in the *Sokaogon* cases. Those cases arose when the Sokaogon Chippewa Community and two other Tribes contested the Interior Departments's decision to deny their application for acquisition of land for an off-reservation casino. Similar to the case at hand, the *Sokaogon* cases involved the issue of whether the plaintiff-tribe had shown sufficient bad faith in agency decision-making that would warrant additional discovery and depositions. In *Sokaogon I* the court found that the plaintiff-tribe had failed to make an adequate showing of bad faith but then, upon further review, in *Sokaogon II*, the court reversed itself and ruled that the plaintiff tribe had shown sufficient bad faith and thus was entitled to additional discovery and depositions.

The plaintiff-tribe succeeded in showing bad faith by identifying high level political influence on Interior Department officials. The plaintiff-tribe sought to build an off-reservation casino near Hudson, Wisconsin (across the river from the Minneapolis and Saint Paul metropolitan area) and other neighboring tribes opposed their application. Those opposing tribes met *ex parte* with high level Department officials, a United States Senator, and several United States Representatives in Washington D.C. Notably, the plaintiff-tribe did not know about these meetings until after they had occurred. Even the White House appeared to take an active role in the Department decision. A member of the White House political staff sent a fax to the Department inquiring about the status of the plaintiff-tribe's application. In short order the Department faxed

13

back two draft letters, one indicating the Department had decided to deny the plaintiff-tribe's application, and the other indicating that the Department was reviewing the matter with "great care." The *Sokaogon II* court concluded that this White House action tended to indicate that either: (1) the White House had already been involved in the matter, or (2) the Department was aware of the "need for some subterfuge in the process" to allow Harold Ickes [White House Deputy Chief of Staff for Policy and Political Affairs under President Clinton] to advance political ends." *Sokaogon II*, 961 F. Supp at 1283. Notably, in the *Sokaogon* cases, the Secretary of the Interior admitted that political pressure had been exerted on him with regard to releasing the decision denying plaintiff-tribe's application. *Id.* at 1281-84. That the plaintiff tribe in the *Sokaogon* cases was able to identify specific contacts between Congress and the Department and between White House staff and Department staff allowed that court to find that the plaintiff-tribe had made a "strong showing" of bad faith and political influence such that additional discovery and depositions were warranted.

Here the Tribe's allegations of bad faith and improper political influence are markedly different from the allegations in the *Sokaogon* cases.[6] The Tribe alleges that Milwaukee County Executive Scott Walker sent the Department a letter inquiring about the status of the Tribe's fee-to-trust application and referencing "promises" made to him by Assistant Secretary Carl Artman. (AR12850.) In addition the Tribe argues that the ultimate decision to deny their application was contrary to what the regional office recommended but consistent with what the Tribe's biggest potential competitor, the Potawatomi Casino, wanted. To support their contention of bad faith, the Tribe states that a confidential memorandum from the Bureau of Indian Affairs ("BIA") Regional

---

[6] The Tribe concedes that "there are factual dissimilarities between *Sokaogon II* and the present case." (Dkt. 39 n. 2.)

14

Director recommending approval of the Tribe's application—a memorandum the Tribe claims it did not have access to—was cited and quoted by Potawatomi lawyers. The Tribe contends that the Department may not have actually considered the Regional Director's 2007 memorandum recommending approval of the Tribe's application before the Department denied the application in 2009. The Tribe also cites a Department e-mail discussing whether a notice cancelling the EIS had been issued as proof that the Department had made up its mind about the Tribe's application well before January 2009.

The fact that Milwaukee's County Executive had communicated a strong interest in the project is hardly surprising or improper. As all concede, the IGRA requires the Secretary to consider the views of state and local officials in deciding whether the proposed gaming establishment on the newly acquired land would be detrimental to the surrounding community. 25 U.S.C. § 2719(b)(1)(A). Moreover, in light of the January 3, 2008 Guidance Memorandum referenced in the Department's decision denying the Tribe's application and Associate Deputy Secretary Cason's February 13, 2007 letter advising the Tribe of the concerns expressed in Congress over off-reservation gambling, it was clear that the Tribe's application faced an uphill battle. While it would be inappropriate for Department officials to communicate the Secretary's decision to other interested parties before informing the Tribe, that is significantly different than having high-level White House officials dictate to the Secretary what his decision should be. And contrary to the Tribe's arguments, the fact that the Department eventually disagreed with the Regional Director's recommendation does not show "bad faith." The Department retains the discretion to proceed on fee-into-trust applications as it sees fit. On this record it appears that the Department did, in fact, consider the Regional Director's recommendation. The Tribe admits "it is more than reasonable to assume that persons in the Office of Indian Gaming or others at BIA's

15

central office considered the regional office's two-part recommendation memorandum." (Mot., Dkt. 35 at 24.) While the "confidential" memorandum from the Regional Director recommending approval of the Tribe's fee-into-trust application was originally designated privileged, the Department later removed the privileged designation. (Dkt. 48 at 3.) The Tribe's contention that the Department fails to offer an easy answer as to how the Potawatomi obtained the document fails to take into account the distinct possibility that the Potawatomi diligently filed open records requests. (See AR005950-3 and AR005985.)

Even taking all of these allegations of bad faith in combination, they fall short at least at this point of establishing the strong showing needed to institute the kind of discovery the Tribe has requested. That assessment may change as the parties present their arguments on the merits. For now, however, the Tribe's request to undertake such discovery, including depositions of the decision makers is denied.

## IV. CONCLUSION

The Tribe's motion to consider extrinsic evidence (Dkt. 34) is **granted in part and denied in part**. With the exception of the complaint previously filed by the Tribe against the Department, the Court **grants** the portion of the motion related to additional documents to complete and supplement the record. However, because the Tribe has failed to allege sufficient facts to establish bad faith, this Court **denies** the portion of the Tribe's motion requesting extra-record discovery and depositions. The Tribe's motion seeking judicial notice (Dkt. 3) is **granted in part and denied** in part. Specifically, this Court will not take judicial notice of Exhibits 6, 7 and 13, (Dkt. 3), but will take judicial notice of all other requested documents and, upon a showing of relevance, will

16

consider them in its review. The Clerk is directed to place this matter on the calendar for a telephone scheduling conference.

**SO ORDERED** this    4th    day of November, 2010.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge